# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| BRYAN MORROW, | : | CIVIL ACTION NO. |
| BOP Reg # 66148-019, | : | 1:16-CV-193-WSD-JSA |
|    Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:14-CR-295-WSD-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|    Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate his 41-month sentence. (Doc. 39).  **IT IS RECOMMENDED** that the motion be **DENIED**.[1]

---

[1] Prior to serving as a U.S. Magistrate Judge, the undersigned served from February 25, 2004 through June 1, 2012 as an Assistant U.S. Attorney in the same United States Attorney's Office ("USAO") that prosecuted Movant. The undersigned served as deputy chief of the economic crime section of the USAO for some of that period. The undersigned recalls no personal or supervisory involvement over defendant's case.

Although no request for recusal has been made, the undersigned will briefly explain why he has not recused *sua sponte*. Title 18 U.S.C. § 455(b)(3) requires a judge who previously served in government to recuse only if the judge actually participated in the case. *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995). In other words, "a judge is not subject to mandatory disqualification based on the mere fact that another lawyer in his prior government office served as an attorney on the matter." *United States v. Champlin*, 388 F. Supp. 2d 1177, 1180 (D. Haw. 2005). Several courts have held that "an Assistant United States Attorney is only disqualified from cases on which he or she actually participated." *Id.* at 1181 (citing *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification."); *Mangum*, 67 F.3d at 83 (same); *Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) (same). "[T]he same rule applies to former supervisors in

I.     **Background**

A grand jury indicted Movant in August 2014 on the following charges: conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (count 1); bank fraud, in violation of 18 U.S.C. § 1344 (counts 2-6); and production and transfer of a false identification document, in violation of 18 U.S.C. § 1028(a)(1)-(2) (counts 7-14). (Doc. 9). Movant entered a non-negotiated plea to all charges (Docs. 22, 37) and received a 41-month term of imprisonment in January 2015 (Docs. 32, 38). Movant did not file a direct appeal. He timely signed and filed his § 2255 motion on January 13, 2016. (Doc. 39 at 13).

At Movant's plea hearing, the government made a proffer of the facts it would prove at trial to convict him (Doc. 37 at 41-54), stating in part:

> In December of 2013, [Movant] approached [a cooperating defendant] . . . in an[] unrelated case[ and] offered to help [her] clients . . . get loans for amounts that range from two hundred fifty to five hundred thousand dollars from banks and credit unions.
>
> [Movant] told the cooperating defendant that he would take care of getting the necessary paperwork to qualify the borrower[, and he]

---

the United States Attorney's office; § 455(b)(3) requires recusal only when the supervisor actually participated in a case." *Champlin*, 388 F. Supp. 2d at 1181; *see also United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988). As the undersigned was uninvolved in this case and otherwise perceives no ground for recusal, the Court does not *sua sponte* find that recusal is warranted.

> expected to receive fifteen hundred dollars and a percentage of the loan proceeds as compensation for engaging in this kind of conduct.
>
> In subsequent conversations, [Movant] talked to the cooperating defendant in more detail about his ability to procure and provide false bank statements and other false documents that would be used to qualify individuals for loans.
>
> In January of 2014, the cooperating defendant introduced [Movant] to an FBI undercover employee. There ensued six months of multiple meetings, phone calls and e-mails . . . .

(*Id.* at 42).

In Movant's sentencing memorandum, he noted that his Pre-Sentence Report ("PSR") "starts with a base offense level of 7. PSR ¶ 50. The probation officer [] then add[s] 16 levels under U.S.S.G. § 2B1.1(b)(1)(I) for a loss exceeding $1,000,000 but less than $2,500,000. PSR ¶ 51." (Doc. 27 at 3). Movant objected to the 16-level increase because the § 2B1.1 fraud guideline "includes a loss table which fails to reflect to any degree the disparity which exists in the instant case between the amount of loss that potentially could have occurred and the actual profit to [Movant of no more than $8,500]." (*Id.* at 8; *see id.* at 6). "This disparity of as much as 14 levels warrants a downward departure . . . ." (*Id.* at 8). The memorandum also suggested that sentencing factor manipulation had occurred.

A second [sentencing] alternative for the Court is to consider the amount

3

> of money taken after the first "account take over" in February of 2014. This account take over resulted in a fictional loss of $200,000. [Movant] could have been arrested at that time, but the government chose not to do so. Instead the government continued its investigation for another 5 months and increased the fictional amount of loss by 1 million dollars. If the Court was to use the $200,000 as the proper measure of [Movant's] culpability, [he] would be facing a 10 level increase under the guidelines, as opposed to the 16 level increase proposed by the government.

(*Id.* at 10).

But based on the evidence presented by the government and/or contained in the PSR — whose accuracy Movant did not contest (*see* Doc. 38 at 3-4, where Movant's counsel stated, at sentencing, that "pretty much everything in this case is recorded conversations or e-mails, so the facts themselves are not in dispute")) — the Court, "looking at [the] overall scheme," concluded "that $1.1 million is a fair estimate or evaluation of the intended loss." (*Id.* at 15). The Court also rejected the sentence manipulation argument, concluding that it was reasonable for the undercover FBI agent to pursue four account takeovers rather than just one and to pursue multiple fraudulent loans in order for there to be enough illicit conduct to show that Movant engaged in it intentionally. (*Id.* at 14).

## II.   Movant's 28 U.S.C. § 2255 Motion

A federal prisoner may file a motion to vacate his sentence "upon the ground

4

that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  But it is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  "[N]onconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994) (internal quotations omitted)).

Movant raises three grounds for relief in his § 2255 motion:

1. an amendment to the Sentencing Guidelines, enacted after his judgment of conviction became final, reduces his loss enhancement by 4 levels and his sentencing range to 27-33 months;

2. the government failed to prove that he subjectively intended the calculated loss or that he acted recklessly; and

3. sentencing factor manipulation — the agent who conducted the government sting operation manipulated the loss amount.

(Doc. 39 at 4; *see id.* at 14-16 (attachment to § 2255 motion containing a portion of

5

Amendment 791 to the Sentencing Guidelines)).

As shown below, Movant has procedurally defaulted each of these claims, and therefore they are not properly before the Court for merits review. And even if ground 1 is not defaulted in its entirety, it fails on the merits. *See Spencer v. United States*, 773 F.3d 1132, 1135 (11th Cir. 2014) (*en banc*) (holding that federal prisoner "cannot collaterally attack his sentence based on a misapplication of the advisory [sentencing] guidelines"); *see also Burke*, 152 F.3d at 1332 ("hold[ing] that a claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice").

### A. The Rules of Procedural Default

In general, "an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (citation omitted); *see also Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction on direct

appeal or else the defendant is barred from raising that claim in a [collateral] proceeding.").

> When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. Alternatively, under the fundamental miscarriage of justice exception, in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Mills*, 36 F.3d at 1055 (citations and internal quotations omitted); *see McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."); *Fordham*, 706 F.3d at 1349 ("A default . . . may be excused . . . if one of two exceptions applies. The exceptions are: (1) cause and actual prejudice, and (2) actual innocence.").

To establish cause, a movant must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar. In order to

7

do so, however, the claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).

"To establish 'prejudice,' a [movant] must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003); *see Lynn v. United States*, 365 F.3d 1225, 1235 n.21 (11th Cir. 2004) (noting that "cause and actual prejudice standard" for § 2255 motion "mirrors the standard used to evaluate collateral attacks on state convictions"); *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997) (" '[A]ctual prejudice' is 'not merely that the errors at [the defendant's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))).

To prevail on a claim of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Id.* at 324; *see*

8

*Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998) (applying actual innocence standard to procedural default of § 2255 claims).

**B.     Ground 1**

In his § 2255 motion, Movant "relies upon the amendment to the loss table in Section 2B1.1, which is Amendment 791 to the Sentencing Guidelines." (Doc. 41 at 11 (citing U.S.S.G. Guidelines Manual, Suppl. to Appx. C, Amend. 791, at 102-110); *see* Doc. 39 at 14-16).  That amendment took effect in November 2015.  (Doc. 41 at 10).  The government argues that no relief is available to Movant under Amendment 791 because it is not listed in U.S.S.G. § 1B1.10(c) as an amendment that applies retroactively.  (*Id.* at 11 (citing *United States v. Conaway*, 535 Fed. Appx. 898, 900 (11th Cir. 2013) ("To obtain a reduction in a term of imprisonment based on an amendment to the Sentencing Guidelines, the relevant amendment must be listed in § 1B1.10(c).")));  *see also United States v. McMillan*, No. 5:13 CR 449, 2016 U.S. Dist. LEXIS 37386, at *2 (N.D. Ohio Mar. 16, 2016) ("On November 1, 2015, the Sentencing Commission amended the fraud loss table [via Amendment 791,] which provided the basis for [movant's] eight level enhancement.  [But] . . . the Commission did not make the amendment retroactive.  Where the Sentencing Commission has not made a guidelines amendment retroactive, a defendant may not obtain relief under

9

Section 3582(c). This Court has no jurisdiction to lower a sentence under 18 U.S.C. § 3582(c)(2) if the sentence was based on a Guideline range that was not subsequently lowered and made retroactively applicable to prior final judgments. Furthermore, the Court is unaware of any other basis upon which [movant] could otherwise qualify for a reduction or modification of her sentence." (footnote and citation omitted)); *see id.* at \*2 n.1 ("U.S.S.G. § 1B1.10(d) lists the 'covered amendments' that were made retroactive and eligible for motions under 18 U.S.C. § 3582(c). Amendment 791, which altered the fraud loss table[,] is not listed."). As the foregoing demonstrates, Amendment 791 to the Sentencing Guidelines offers Movant no relief.

In his reply, Movant argues in the alternative that this Court should retroactively apply Amendment 792 to the Sentencing Guidelines, also with an effective date of November 1, 2015, because it clarifies that the fraud loss amount calculation must be based on the loss that the defendant *subjectively intended*. (Doc. 42 at 2-3); *see United States v. Balcom*, 324 Fed. Appx. 862, 864 (11th Cir. 2009) (quoting *United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003), to the effect that "clarifying amendments, which are typically retroactive in the Eleventh Circuit, 'may only be retroactively applied on direct appeal of a sentence or under a § 2255 motion'").

In pertinent part, Amendment 792 states:

10

> The Commentary to § 2B1.1 captioned "Application Notes" is amended in Note 3(A)(ii) by [replacing] "(I) means the pecuniary harm that was intended to result from the offense; []" [with] "(I) means the pecuniary harm that the defendant purposely sought to inflict; []."

18 USCS Appx § 792. Application Note 3 to § 2B1.1 — regarding the loss calculation under § 2B1.1(b)(1), which includes the loss table revised by Amendment 791 — now reads as follows:

> 3. Loss Under Subsection (b)(1). . . .
>
>   (A) General Rule. Subject to the exclusions in subdivision (D), loss is the greater of actual loss or intended loss.
>
>   (i) Actual Loss. "Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.
>
>   (ii) Intended Loss. "Intended loss" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).

18 USCS Appx § 2B1.1, Appl. Note 3.

Amendment 792 is arguably a clarifying amendment that applies retroactively. But because Amendment 792, unlike Amendment 791, only *clarifies* § 2B1.1(b)(1), rather than changes its substance, Movant's claim — that the Court should have applied the meaning of the clarification in calculating his sentence in January 2015 —

11

was available to him both at sentencing and on direct appeal. Indeed, previously, "Intended Loss" was defined as "the pecuniary harm *that was intended to result from the offense*." 18 USCS Appx § 2B1.1 (2014 Manual), Appl. Note 3 (emphasis added). While the phrase "the pecuniary harm that the defendant purposely sought to inflict" is somewhat more precise, Movant already had a ground to object to loss he did not intend and to appeal a finding of such unintended loss. But he did not do those things. Notably, Movant does not explain how the change from "pecuniary harm that was intended to result from the offense" to "the pecuniary harm that the defendant purposely sought to inflict" meaningfully changed a potential appellate argument, and/or suddenly revealed to him a new meritorious argument that was previously hidden and unforeseeable. Thus, his failure to raise it on appeal constitutes the procedural default of the claim, and Movant has not demonstrated any basis for excusing that default.

And to the extent that his Amendment 792 claim is not defaulted, the Court addresses its merits and finds them wanting. Movant shows no reasonable probability, *see Campbell*, 353 F.3d at 892, that this Court, in applying the revised Application Note 3 to the evidence of Movant's criminal activity, would have found that he "intended" to cause at least $1 million in pecuniary harm but would not have found

12

that he "purposely sought to inflict" such harm. (*See* Doc. 38 at 19-20, where the prosecutor noted, at sentencing, that in "the first recorded meeting with the undercover [agent] and [the cooperating defendant, Movant] says, ultimately I want to get you in a position where you're getting a loan of 5 to 10 million dollars. He used numbers like that on later occasions. In April in presenting what he wanted to do, he said, the first loan we are going to get you is 150,000, and then what you do is you use some of that to make your payments and stay current, and now that you've got a successful history you will go get another loan, using false stuff, for $700,000. He talked about using the big numbers.")). These conversations are part of the evidence that the Court considered in calculating Movant's sentence.

Movant thus has not shown that he was prejudiced by the Court's use of the January 2015 version of § 2B1.1 rather than the November 2015 version. And even if Movant could establish cause and prejudice to allow for merits review of any portion of his ground 1 claim, he has not shown that either of the nonconstitutional errors he alleges in ground 1 "constitutes a fundamental defect which inherently result[ed] in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Burke*, 152 F.3d at 1331 (internal quotations omitted); *see id.* at 1332 ("hold[ing] that a claim that the sentence imposed

is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice").

### C.     Grounds 2 and 3

With respect to grounds 2 and 3, it is undisputed that Movant has not shown cause for his failure to raise these grounds on direct appeal. Indeed, he did not file a direct appeal — and thus he cannot allege ineffective assistance of appellate counsel to excuse his procedural default of these grounds — and he also has not alleged any "objective factor external to [his] defense" that prevented him from raising the grounds on appeal. *See Carrier*, 477 U.S. at 488. Moreover, as noted above, Movant's trial counsel did raise these grounds at sentencing in substantially the same form as Movant raises them here, and this Court rejected them. (*See* Doc. 27; Doc. 38 at 14-15).

Nor can Movant rely on the fundamental miscarriage of justice exception to excuse his procedural default of grounds 2 and 3. *See Crawford v. United States*, 501 Fed. Appx. 943, 945 (11th Cir. 2012) (concluding that appellant "is procedurally barred from challenging the miscalculation of his sentence for the first time in a motion to vacate, and he cannot excuse his default based on the exception for actual

innocence" (citing *McKay v. United States*, 657 F.3d 1190, 1196-99 (11th Cir. 2011)); and noting, "The actual innocence exception applies only to an issue of factual innocence, not mere legal insufficiency." (citing *id.* at 1197 (internal quotations omitted)) (see *Bousley v. United States*, 523 U.S. 614, 623 (1998))).

By failing to raise grounds 2 and 3 on direct appeal, Movant has procedurally defaulted them, *see Fordham*, 706 F.3d at 1349 ("a defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a [collateral] proceeding"), and, as shown above, Movant cannot rely on either cause and prejudice or a fundamental miscarriage of justice to excuse the default of these grounds. Movant's § 2255 motion should therefore be denied in its entirety.

## III. Certificate Of Appealability

A § 2255 movant must obtain a certificate of appealability ("COA") before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or

15

that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because no reasonable jurist could argue that Movant has set forth a viable claim in his § 2255 motion, a COA should not issue in this matter.

## IV.    Conclusion

**IT IS THEREFORE RECOMMENDED** that Movant's 28 U.S.C. § 2255 motion (Doc. 39) be **DENIED** and that he be **DENIED** a certificate of appealability.

**SO RECOMMENDED** this 11th day of May, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE